## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re Mountain Run Golf, Inc.           )
                                        )     **Case No. 09-37000-KRH**
           **Debtor**           )     **Chapter 11**
_____  )     **Procedurally Consolidated**

## MOTION FOR ENTRY OF AN ORDER APPROVING A BREAK-UP FEE, BIDDING PROCEDURES AND AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS, AND OTHER RELATED RELIEF

**NOW COMES** Mountain Run Golf, Inc., debtor and debtor-in-possession (the "Debtor"), pursuant to 11 U.S.C. §§ 105, 363 and 365, to move this Court to enter an Order authorizing the sale of certain of the Debtor's assets free and clear of liens and interests pursuant to a public auction and providing for payment of a break-up fee and bidding procedures in connection with the public auction of such assets.1 In support of this Motion, the Debtor respectfully represents follows:

### *Background*

1.      The Debtor commenced this case by filing a voluntary Chapter 11 petition on October 22, 2009. The Debtor has continued to operate as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107, 1108. This case has been procedurally consolidated with the Chapter 11 case of Mountain Run, LLC, No. 09-37005-KRH.

DOUGLAS A. SCOTT, PLC
1805 Monument Avenue, Suite 311
Richmond, Virginia 23220
☎ 804 257.9860
Counsel to the Debtor-in-Possession

2. Jurisdiction over this Motion is vested in the Court pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding. 28 U.S.C. §157(b). Venue is proper in this District under 28 U.S.C. §1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. § 363.

3. The debtors' business is the operation of a membership golf club located in Hanover County, Virginia, doing business as The Federal Club, located at 13000 Palmer's Way, Glen Allen, Virginia 23059. Mountain Run Golf, Inc., owns and operates an eighteen hole golf course and associated facalities (the "Golf Course" or the "Assets"). It is one of the finest golf courses in the Mid-Atlantic states. Mountain Run, LLC, owns building lots surrounding the golf course held for sale to persons who wish to construct residences and undeveloped land. The ownership of both entities is held by the same investors.

4. Since the filing, the debtor has been searching for new financing or a new investor. It has implemented substantial changes in its operations intended to cut expenses and increase revenues without impairing the quality of what many say is one of the finest golf courses in the Mid-Alantic region. However, its cash flow is presently insufficient to service all of its debts, secured and unsecured, and the most prudent course appears to be to sell the Golf Course.

5. Approximately three weeks ago, the New Federal Club, Inc. ("Purchaser") approached the debtor and its senior secured lender, Bank of Essex, respecting a possible

---

1 Certain capitalized terms contained in the Motion are defined in Exhibit B, the proposed Bidding Procedures.

purchase of the Golf Course. As a result, the parties have entered into the Asset Purchase Agreement ("APA"). Pursuant thereto, Purchaser has agreed to purchase the Golf Course for the sum of $2,000,000.00 ("Purchase Price"). Final agreement between the parties on the terms and conditions of the Purchaser's APA is not yet complete but it is anticipated to be executed on or about April 15, 2010, when it will be filed and attached to this Motion as Exhibit A.

6.     Certain additional terms and conditions are contained in the APA. Among the most important of those terms are that: (a) the Golf Course be sold free of all liens, encumbrances or interests pursuant to 11 U.S.C. § 363(f); (b) the Purchaser's APA serve as a "stalking horse" bid at an auction (the "Auction") of the Golf Course; (c) there be a competitive, public auction of the Golf Course; (d) the Purchaser be protected by a "break-up fee" against out-of-pocket losses in the event that a competing bid wins.

### *The debtor may sell the Golf Course outside of the ordinary course of business.*

7.     11 U.S.C. § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In accordance with FED.R.BANKR.PROC. 6004(f)(1), sales of property outside the ordinary course may be by private sale or public auction.

8.     The majority of courts have applied a business judgment rule to such a sale, requiring that a "sound business reason" exist in support of a debtor's request to sell estate property other than in the ordinary course of business. *See, e.g., In re Lionel Corp.*,

3

722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re WBO Partnership*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995). To satisfy the "business purpose test", the debtor must demonstrate (a) a sound business purpose; (b) good faith; (c) adequate notice of the sale; and (d) a fair and reasonable purchase price.

9.      Ample basis exists for a sale of the Golf Course outside of the ordinary course of business. The debtor has determined, after evaluation of its business prospects and in consultation with its creditors, that a going-concern sale of the Golf Course will likely yield the greatest return on the Asset.

10.      A sound business reason exists for selling the Golf Course now. The Golf Course is, in many ways, a seasonal business. An immediate sale will yield the best price because any potential purchaser will enjoy the benefit of the maximum revenues from the course that come in the Spring, Summer and early Fall. Such a sale will tend to maximize the sale price of the Golf Course.

11.      The sale and the sale process has been proposed in good faith. The APA was negotiated at arm's length between the proposed Purchaser and the debtor. The proposed Bidding Procedures will insure that the Golf Course is sold for the maximum price by providing an opportunity for competing bids.

12.      The notice procedures set forth herein will provide sufficient notice of the terms and conditions of the proposed sale, the property to be sold, and the date, time and place of the hearing on the approval of the sale.

13.     The debtor believes that the proposed sale price is the minimum price that the Golf Course asset should bring in the marketplace but, to the extent that it is not, the Auction of the Golf Course under the proposed Bidding Procedures after a period of public advertising will prove or disprove that belief.

14.     To facilitate the sale, the debtor requests that the Court enter an order allowing the debtor to sell the Golf Course2 free and clear of all liens and interests that are attached to it pursuant to 11 U.S.C. § 363(f). That section provides, in part, that the debtor may sell property of the estate free and clear of liens and interests if:

(2)     such entity consents; …

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest…

11 U.S.C. § 363(f).

14.     To the best of debtor's information and belief, Bank of Essex and Smith Turf and Irrigation, Inc, each clain a a first lien in the Golf Course property. As to the lien rights of either, because the debtor will sell the Golf Course for fair market value, pursuant to §§ 363(f)(5) and 506(a)(1), the holders of such liens may be compelled to accept a money satisfaction of their liens based upon the value of their secured collateral. Alternatively, such lien creditors may consent to the sale.

---

2 Further, the debtor requests that the Court also authorize but not require the debtor to sell all of the assets of Mountain Run Golf, Inc. and Mountain Run, LLC at this Auction. Interest has been expressed by potential purchasers in acquiring all of the debtor's assets. The Auction process will permit the debtor to solicit Bids for either: (i) the Golf Course or (ii) the Golf Course plus the remaining real estate assets that are not part of the Golf Course.

15.     Subject to Court approval, the debtor proposes to pay from the gross sale proceeds the usual and customary costs and expenses relating to such sale, including closing costs and expenses. After payment of the closing expenses, the remaining proceeds shall be paid to the secured lenders, as their respective interests may appear or escrowed as the Court may direct until such time as the interests of the respective lien claimants are resolved.

16.     Accordingly, the debtor respectfully submitts that a good business reason exists for seeking the liquidation of the Golf Course asset by way of an auction outside of the context of a confirmed plan of reorganization.

### *Reasonable Bidding Procedures are Required.*

17.     The Purchaser's APA requires, as a condition to Closing, the entry of an Order approving certain bidding procedures ("Bidding Procedures"). Accordingly, pursuant to this Motion, the Debtor requests approval of the sale and bidding procedures outlined below. Acomplete copy of the proposed Bidding procedures are attached hereto as Exhibit B. The debtor believes that the Bidding procedures set out in Exhibit B will maximize the value of the Assets and provide for an organized method for the solitation and evaluation of any competing bids from other potential purchasers.

18.     A bid for the Assets will constitute a "Qualifiying Bid" only if the bid satisfies the following requirements (the "Bid Requirements"):

> (i)     be an offer to purchase the Assets for cash only, or such other consideration as the debtor shall agree to;

6

(ii)    not be contingent on obtaining financing or any other conditions to Closing;

(iii)    be received by the Bid Deadline established by the Court and include the amount being offered for the Assets and expressly state that the offer of the party submitting the bid (the "Bidder") is irrevocable until the earlier of the running of the appeal deadline of the Order approving the Asset sale or completion of the Closing of the same;

(iv)    a competing bid made upon terms and provisions substantially similar to those set forth in the APA with respect of the sale and purchase of the Assets, and for an aggregate purchase price in a net cash amount of at least $25,000.00 in excess of theInitial Bid plus $100,000.00; and

(v)    be accompanied by a cash deposit ("Deposit") to counsel to the Debtor in an amount equal to $20,000.00.

19.    All Bids shall be subject to approval by this Court. Only Bidders having submitted a Qualifying Bid shall be eligible to participate at the Auction. In order to participate in the Auction, a Qualified Bidder shall: (a) include each of the Bid Requirements; and (b) be prepared to demonstrate to the Debtor its ability to consummate the purchase of any such asset and fulfill its obligations. Bidding at the Hearing shall be by open auction. Any incremental bid made subsequent to the initial overbid shall be at least $25,000.00 greater than the most recent bid.

20.    In the event the party who submits the highest and best bid for the Assets fails to close on the sale through no fault of the debtor, the Deposit submitted by such party shall be forfeited to the debtor. To the extent that a party submitting the highest and

best offer fails to close on the sale of the Assets, the debtor may sell the Assets to the party submitting the second highest or best offer without further Court approval.

### *Request for Approval of Break Up Fee and Overbid Protection*

21.     In addition to the foregoing, it is proposed that the Purchaser shall receive a break-up fee of $100,000.00 (the "Break-up Fee") promptly upon termination of the APA as a result of (except for a termination as a result of the Purchaser's willful and material breach) any of the following events:

> (i) approval by the Bankruptcy Court, or any court of competent jurisdiction, of any competing bid;
>
> (ii) the determination by the Debtor or any Chapter 11 or 7 trustee of Debtor not to proceed with the transactions under the APA;
>
> (iii) the sale of the Assets to a party other than the Purchaser;
>
> (iv) the conversion of the Bankruptcy Case into a case under Chapter 7 of the Bankruptcy Code; or
>
> (v) the filing by Debtor of a liquidating Chapter 11 plan without acceptance of any asset purchase.

The Break-up Fee shall be paid as soon as practicable directly out of the cash proceeds of the purchase price paid by any competing bidder.

21.     Sellers often utilize break-up fees and other bidding protections in order to encourage a prospective purchaser to submit an initial bid, subject to higher and better offers, so as to increase the value realized for the estate. This is generally accepted

8

practice encourages an initial bidder to invest the resources required to make an initial offer despite the prospect that it may not acquire the property.

22.     Courts have generally viewed break-up fees as an allowable expense of selling assets of a bankruptcy estate, subject to limitations as to reasonableness.

23.     In *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535 (3rd Cir. 1999), the Third Circuit Court of Appeals held that the allowability of a break-up fee depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate. A break-up fee will provide a benefit to an estate if, for example, assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made, and without which bidding would have been limited. *Id.* at 537. *See also In re Tiara Motorcoach Corp.*, 212 B.R. 133 (Bankr. N.D. Ill. 1997)(in reviewing break up fees, courts look to ability to maximize estate revenues and the best interests of all constituencies); *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995)(break up fee designed to compensate potential acquiror serving as catalyst or stalking horse to attract higher offers); *In re Twenver*, 149 B.R. 954 (Bankr. D. Colo. 1992)(Court looks to whether fee encourages, rather than hampers, bidding, the reasonableness of the fee, and the absence of any self-dealing); *In re Fifth Avenue Associates, L.P.*, 96 B.R. 24 (Bankr. S.D.N.Y. 1989) (reasonableness of fee to be viewed in light of efforts required of bidder and magnitude of the transaction).

24.     The Fourth Circuit has not ruled on the standard to be employed in assessing break-up fees, but the Court has approved the procedure generally. *See In re Ryan,* 261 B.R. 867, 870 (Bankr. E.D. Va. 2001).

25.     The Break-up Fee sought herein is a reasonable, arms-length negotiated accommodation to the prospective Purchaser. The Break-up Fee will provide the prospective Purchaser with reasonable protection in consideration for its agreeing to enter into the APA and being the "stalking horse" bidder. The proposed fee is believed to be a reasonable estimate of the costs which would likely be incurred by a prospective bidder in conducting the necessary due diligence for a transaction of this size and complexity.

26.     Authorization for the Break-up Fee will enable the debtor to proceed expeditiously with the sale process and is in the best interests of the debtor's estate. It is critical to induce the Purchaser to bid to acquire the Assets and is necessary to bring other potential purchasers into the sale process. It is for these reasons that the debtor respectfully requests that the Court approve the proposed Brake-up Fee.

### *Assumption of Unexpired Leases and Executory Contracts*

27.     The APA further provides for the assumption and assignment by the debtor of certain contract and leases to the Purchaser or to a Competing Bidder.

28.     11 U.S.C. § 365 (a) states in pertinent part that:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

10

11 U.S.C. § 365(a).

11 U.S.C. § 365(b)(1) further states:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default;

11 U.S.C. § 365(b)(1).

29.     Pursuant to these provisions, may assume and assign any unexpired lease or executory contract so long as the debtor cures any existing defaults and provides adequate assurance of the proposed assignee's future performance.

30.     The APA requires the Purchaser or Competing Bidder assume the obligation to cure any defaults and to provide adequate protection of future performance when assuming the assignment of any leases or contracts. The debtor reasonably believes that the assumption and assignment of any unexpired leases or contracts is in the best interest of the debtor's estate and its creditors.

31.     The debor shall serve notice to the lessors of any leases to be assumed and to the contracting parties of any executory contracts to be assumed and assigned as to the proposed assumption and assignments, included proposed

11

cure amounts, if any ("Notice"). The Notice will provide that any objections to the proposed assumptions and assignments must be filed with the Court and served on debtor's counsel on or before May 27, 2010.

32.    At the Approval Hearing, the debtor will seek an Order authorizing the assumption and assigment of the leases and contracts set forth in the Notice required by ¶ 31 above to the winner of the Auction, be that Purchaser or the Competing Bidder making the highest or best Bid.

### *Scheduling of the Approval Hearing and other dates*

33.    The debtor respectfully requests that the Court enter an Order scheduling the Auction and the Approval Hearing and any other necessary associated dates or deadlines.

### *Notice of this Motion*

34.    Debtor submitts that by the date of the Approval hearing, adequate notice shall have been given to all known interested parties. The notice provided by the Notice of Motion with regard to the filing of this Motion is sufficient to provide proper and effectice notice of the proposed Bidding Procedures and Auction sale of the Assets.

35.    Notice of this Motion shall be given to: (a) the Office of the United States Trustee; (b) the debtor's creditors; (c) applicable taxing authorities; and (d)

all parties to unexpired leases or executory contracts with the debtor. The debtor asserts that no other or further notice is required.

36.     Pursuant to Local Rule 9013-1(G)(1), the required Memorandum of Points and Authorities has been incorporated into this Motion.

**WHEREFORE,** the debtor respectfully moves this Court to enter an Order substantially in the form annexed hereto as Exhibit C:

(i)     Approving the Break-up Fee, Overbid Protection and Bidding Procedures provided herein, subject to the limitations stated herein;

(ii)    Approving the Notice Provisions contained therein;

(iii)   Approving the sale of the Golf Course and, at debtor's option, the sale of the debtor's non-Golf assets, free and clear of liens and interests;

(iv)    Approving the assumption and assignment of unexpired leases and executory contracts;

(v)     Scheduling the Auction and the Approval Hearing: and

(vi)    Granting the debtor such other and further relief as is just and proper.

Dated: April 13, 2010

/s/ Douglas Scott
Douglas Scott, VSB No. 28211
DOUGLAS A. SCOTT, PLC

13

1805 Monument Avenue, Suite 311
Richmond, Virginia 23220
☎ 804.257.9860
Counsel to the Debtor-in-Possession

Macintosh HD:Case Files:Case Files:M:Mountain Run Golf, Inc.:Motion for Sale, etc 04 13 10

# BIDDING PROCEDURES

### *Sale of Golf Course Assets of*
### *Mountain Run Golf, Inc., and Mountain Run, LLC*
### *Subject to Bankruptcy Court Approval*

A.    *Bids.*    The debtor will accept bids for purchase of its Golf Course assets through its counsel, DOUGLAS A. SCOTT, PLC, as provided herein. The debtor will seek approval of the highest or best offer at a hearing to be conducted by the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Court") on June 2, 2010, or at the earliest date thereafter as the Court may direct (the "Approval Hearing").

B.    *Assets.*    The assets to be sold include the Golf Course improvements, an 18 hole bent grass course with land for an additional 9 hole addition, certain real property, a pool house, snack bar, pro shop, leases, equipment and supplies, inventory, prepaid expenses, books and records (except tax records), customer list and certain intellectual property (the "Golf Course Assets" or "Assets"). A more complete list of the assets may be found as an exhibit to the Asset Purchase Agreement ("APA").

C.    *Initial Bid.*    The initial bid has been made in the amount of Two Million Dollars ($2,000,000.00 USD)("Initial Bid").

D.    *Minimum Bid.*    A Minimum Bid for the Assets (the "Minimum Overbid" or "Minimum Overbids") for the Assets has been established in the amount of the Initial Bid plus One Hundred Thousand Dollars ($100,000.00 USD) *plus* a further bid in increments of Twenty Five Thousand Dollars ($25,000.00)(collectively, the "Bid" or "Bids"). A person or entity that makes such a Bid is a "Bidder".

E.    *Qualification to Bid; Submission of Written Bids.*    All Bids must be in writing and received by debtor's counsel not later than 5:00 p.m. Eastern Daylight Time on the 27th day of May, 2010, or upon such date and at such time as the Court may direct ("Bid Deadline"). Each such Minimum Overbid must include:

> (i)    a duly executed asset purchase agreement substantially similar to the APA ("Bidder's Purchase Agreement") except that:

>> (a)    the Bidder shall be substituted for the Purchaser in the APA;
>> (b)    the proposed Minimum Bid shall not be less than $2,125,000.00 USD.

EXHIBIT

B

(ii)     made by a Bidder that provides satisfactory Financial Evidence[1] to the Seller that it is:

  (a)     financially able to consummate the transactions contemplated by such Initial Bid; and
  (b)     able to consummate the transaction on the date and on the terms contemplated by the APA.

(iii)     accompanied by an official bank check or wire transfer in an amount not less than Twenty Thousand Dollars ($20,000.00 USD)(the "Deposit").

(iv)     each Bid must be delivered to the debtor's counsel, with a copy delivered to the Lender's counsel, so as to be received on or before the Bid Deadline:

  (a)     Debtor's Counsel:

          DOUGLAS A. SCOTT, PLC
          1805 Monument Avenue, Suite 311
          Richmond, Virginia 23220
          ☎ 804.257.9860

  (b)     Lender's Counsel:

          Vernon Inge, Jr., Esquire
          LeClair Ryan, A Professional Corporation
          Federal Reserve Bank Building
          701 East Byrd Street, Sixteenth Floor
          Richmond, Virginia 23219
          804-343-4095

F.     *Additional Bid Requirements.*     Each Bid must also clearly state that the Bidder desires to acquire the debtor's Assets on substantially similar terms and conditions

---

[1] "Financial Evidence" shall mean information sufficient for the debtor to make an informed judgment as to the ability of the Bidder to perform its obligations pursuant to its Bid and shall include a letter from a financial institution demonstrating the Bidder's financial wherewithal to immediately consummate the transaction contemplated by its Bid, or other such evidence satisfactory to the debtor.

as those contained in the APA and must state the proposed purchase price, which may not be less than the amount of the Minimum Overbid.

G.    *No Financial Contingencies.*    Any and all Bids must be firm offers and shall not contain any contingencies as to the validity, effectiveness or binding nature of the Bid, including, but not limited to, contingencies for financing, due diligence, or inspection. All Bids must substantially conform to the terms and conditions contained in the APA. A copy of the APA is attached to debtor's Motion to Approve Bid Procedures or may be obtained from the debtor's counsel, at the notice address above in ¶ E (iv)(a).

H.    *Qualifying Bids.*    Any Bid submitted in accordance with these Bidding Procedures shall be deemed a "Qualifying Bid". Each Bidder submitting a Qualifying Bid shall be a "Qualified Bidder".

I.    *Non-Qualifying Bids.*    No Bid shall be considered that does not conform in all material respects with these Bidding Procedures and the APA, and no such Bid shall be a Qualifying Bid.

J.    *Due Diligence.*    Qualified Bidders shall have reasonable access to the debtor's management and employees, and to the records of the debtor (other than tax records), prior to the Bid Deadline for the purpose of conducting due diligence. However, any Qualified Bidder who wishes to do so must first enter into a nondisclosure agreement with the debtor.

K.    *No Representations.*    The Assets shall be sold "AS IS", and "WHERE IS", and WITHOUT REPRESENTATION OR WARANTY OF ANY KIND, INCLUDING BUT NOT LIMITED TO, FITNESS OR CONDITION. No Bid shall be deemed a Qualifying Bid that provides otherwise.

J.    *Bankruptcy Court Jurisdiction.*    All Qualified Bidders, by making a Bid, have submitted to the exclusive jurisdiction of this Court with respect to the proposed sale of the Assets, including but not limited to, the Bidding Procedures, the solicitation and evaluation of Bids, the Auction, and the Approval Hearing.

K.    *Approval Hearing.*    At the Approval Hearing immediately following the conclusion of the Auction, the debtor shall seek approval by the Court of the sale of the Assets to the Successful Bidder. The sale of the Assets shall be subject to the entry of an Order (the "Sale Order") by the Court:

(i)      approving the sale of the assets to the Successful Bidder and the assumption of the leases and executory contracts listed in the APA pursuant to 11 U.S.C. § 365;

(ii)     containing a finding that the successful Bidder is a good faith purchaser pursuant to 11 U.S.C. § 363(m); and

(iii)    directing that the sale order be effective immediately pursuant to FED.R.BANKR.PROC. 6004 and 6006.

J.    *Auction Process.*    The auction of the Assets (the "Auction") will be conducted at the United States Bankruptcy Court, 701 East Broad Street, Richmond, Virginia 23219 in Room 5000 on June 2, 2010, at _____ a.m./p.m. o'clock, or as soon thereafter as counsel may be heard, or upon such other date and time as the Court may direct. Only Qualified Bidders may participate in the Auction. The Auction shall commence with the debtor's announcement of the Initial Bid and any other Qualifying Bids. The Auction will then be open for any other higher or better Qualifying Bids from any Qualified Bidder. The first such Qualifying Bid above the Initial Bid submitted at the Auction shall be at least Twenty Five Thousand Dollars ($25,000.00 USD) higher than the higher of the Initial Bid plus $100,000.00 or the highest of any Qualifying Bids. Subsequently, Qualifying Bids may only be submitted in increments of not less than Twenty Five Thousand Dollars ($25,000.00 USD) over the then highest or best Qualified Bid, as determined in the debtor's sole discretion; *provided, however,* the debtor may increase or decrease the amount of the incremental bid amount as it deems appropriate during the course of the Auction. Any Qualifying Bid at the Auction must include substantially the same terms and conditions as contained in the APA.

K.    *Conclusion of Auction.*    At the conclusion of the Auction, the Qualified Bidder submitting the highest or best Bid, as determined in the sole discretion of the debtor, shall be the "Successful Bidder". The Qualified Bidder submitting the next highest or best Qualifying Bid, as determined in the sole discretion of the debtor, shall be the "Successful Backup Bidder". The debtor shall inform all Qualified Bidders at the Auction of the Qualifying Bid that debtor will take before the Court for approval at the Approval Hearing.

L.    *Bids to remain open; Deposits Refunded.*    All Qualifying Bids made before the Approval Hearing shall, notwithstanding the debtor's acceptance of another Qualifying Bid, remain open and irrevocable until the earlier of: (a) ten (10) days following the conclusion of the Auction or (b) the successful conclusion of the Closing (defined below), and may during that period be accepted and consummated without

further Order of the Court in the event that the sale to the Successful Bidder or to the Successful Backup Bidder is either not approved by the Court or is not consummated at the Closing. Deposits made by Qualifying Bidders that are not the Successful Bidder or the Successful Backup Bidder shall be returned promptly following the conclusion of the Approval Hearing. The Deposit of any Successful Backup Bidder shall be retained no longer than the third business day following the completion of the Closing in the event another Successful Backup Bidder becomes the Successful Bidder. The Deposit submitted by the Successful Bidder shall be credited against the total purchase price to be paid by the Successful Bidder.

M. *Default by Successful Bidder.* After the entry of an Order by the Court approving the sale of the Assets to the Successful Bidder, the Successful Bidder shall be in default on its Bid if it fails to consummate the purchase of the Assets within two (2) business days following the termination of the ten (10) day appeal period allowed for an appeal of the Approval Order, providing that no timely stay pending appeal has been ordered by the Court. In such event, such Bid shall be void. In such event, the Successful Backup Bidder shall close the contemplated Asset sale transaction within three (3) business days from receipt of written notice from the debtor of the failure of the Successful Bidder to do so. In the event that the Successful Backup Bidder does not timely close the Asset sale transaction, such Bid shall be void, and the next highest or best Qualifying Bidder shall close the contemplated Asset sale transaction within three (3) business days from receipt of written notice from the debtor of the failure of the Successful Backup Bidder to do so. This process shall continue until no further Qualified Bidders remain other than the maker of the Initial Bid. In such case, the debtor shall consummate the Asst sale transaction with such party pursuant to the terms of the APA, including the Initial Bid as set forth herein, as soon as reasonably possible.

N. *Closing.* The closing of the Asset sale contemplated herein following the conclusion of the Approval Hearing (the "Closing") shall occur on or before June 15, 2010, subject to the entry of such Orders of the Court as are necessary and appropriate.

O. *Additional Information.* Questions regarding these Bidding Procedures may be directed to counsel for the debtor, at the contact information above.

Macintosh HD:Users:douglasscott:Desktop:BIDDING PROCEDURES 03 13 10

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re Mountain Run Golf, Inc.     )

                                   )     **Case No. 09-37000-KRH**

         **Debtor**         )     **Chapter 11**

_____)     **Procedurally Consolidated**

## ORDER ON MOTION BY DEBTOR FOR ENTRY OF AN ORDER APPROVING A BREAK-UP FEE, BIDDING PROCEDURES AND AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS, AND OTHER RELATED RELIEF APPROVING TERMINATION FEE AMOUNTS AND BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS

**THIS MATTER** coming on before this Court on the Motion of the debtor for Entry of an Order Approving a Break-up Fee, Bidding Procedures and Authorizing the Sale of Assets Free and Clear of Liens and Interests, and Other Related Relief (the "Sale Procedures Motion" or "Motion"), this Court having reviewed the Sale Procedures Motion, and having heard the arguments and representations of counsel regarding the relief requested therein at a hearing before the Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Sale Procedures Motion and at the Hearing establish just cause for the relief granted herein;

DOUGLAS A. SCOTT, PLC
Suite 311, 1805 Monument Avenue
Richmond, Virginia 23220
Counsel to the Debtor-In-Possession



**WHEREFORE, THE COURT HEREBY FINDS THAT:**

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

D.      Notice of the Sale Procedures Motion was good and sufficient for all purposes.

E.      The procedures set forth in the Sale Procedures Motion are reasonably calculated to maximize the value of the debtor's Assets.

F.      The statutory predicates for the relief sought in the Sale Procedures Motion are §§ 105, 363, and 365 of the Bankruptcy Code and FED.R.BANKR.PROC. 2002, 6004 and 6006.

G.      All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Procedures Motion or the attachments thereto.

H.      The debtor is the owner of certain assets which include a golf course and associated improvements and undeveloped land, leases and contracts (the "Assets"). The debtor has senior secured debt obligation to the Bank of Essex that are secured by most, if not all, of the Assets. The assets offered for sale are the Golf Course Assets, also referred to as the Assets, and, at the option of the debtor, substantially ass the non-Golf Course assets of the debtor.

I.     Proper, timely and sufficient notice of the relief sought in the Sale Procedures Motion has been provided in accordance with 11 U.S.C. §§ 102, 363 and 365 and FED.R.BANKR.PROC. 2002, 6004, and 6006; such notice was proper and sufficient; and no other or further notice shall be required.

J.     A reasonable opportunity to object and be heard with respect to the Sale Motion and the relief requested therein has been afforded all interested persons and entities.

Based upon the foregoing, **IT IS HEREBY ORDERED THAT:**

1.     The Sale Procedures Motion is **GRANTED.** The Bidding Procedures in the form and substance attached hereto as Exhibit A are hereby **APPROVED.**

2.     All capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Procedures Motion or the Bidding Procedures.

3.     The debtor is hereby authorized to to receive Bids for the sale of the Assets or, at their option, for substantially all of the assets of the debtor, employing the Bidding Procedures attached as Exhibit A.

4.     The Auction, if necessary, shall be conducted immediately before the Approval Hearing to be held on _____ , 2010 at _____ o'clock at the United States Bankruptcy Court for the Eastern District of Virginia , 701 East Broad Street, Room 5000, Richmond, Virginia 23219.

5.     All Bids shall be subject to the approval of the Court. Only Qualified

Bidders having submitted a Qualifying Bid shall be eligible to participate in the

Auction. Bidding at the Auction shall be done by open auction, and any

incremental bid made subsequent to the highest initial bid shall be at least

$25,000.00 greater than the highest initial bid or a subsequent higher bid.

6.     In the event the party who submits the highest and best bid for the Assets

fails to close on the sale through no fault of the debtor, the Deposit submitted by

such party shall be forfeited to the debtor. To the extent that a party submitting the

highest and best offer fails to close on the sale of the Assets, the debtor may sell the

Assets to the party submitting the second highest or best offer without further Court

approval.

7.     In addition to the foregoing, the following provisions respecting Break-up

Fee shall apply:

> (i)     The Purchaser shall receive a Break-up Fee of $100,000.00
> upon termination of this APA as a result of (except for a termination
> as a result of the Purchaser's willful and material breach) the
> following events: (a) approval by the Bankruptcy Court, or any court
> of competent jurisdiction, of any Competing Bid; (b) the
> determination by the debtor or any Chapter 11 or 7 Trustee of debtor
> not to proceed with the transactions under the APA; (c) the sale of
> all or substantially all of the assets or outstanding capital stock of or
> business combination involving the debtor and a party other than the
> Purchaser; (d) the conversion of the Bankruptcy Case into a case
> under Chapter 7 of the Bankruptcy Code; or (e) the filing by debtor
> of a liquidating Chapter 11 plan without acceptance of any asset
> purchase.

(ii) The Break-up Fee shall be paid as soon as practicable directly out of the cash proceeds of the purchase price paid by any Competing Bidder. The Purchaser's right to receive a Break-up Fee is further subject to the findings and conclusions made by the Court at the Approval Hearing to be held on _____, 2010.

8. The Court shall consider all other issues raised by the Sale Procedures Motion at the Approval Hearing.

9. Upon entry, the Clerk shall serve a copy of this Order to those parties on the attached Service List.

Dated: _____

_____
Kevin R. Huennekens
United States Bankruptcy Judge

Entered on Docket: _____

I ask for this:

\s\ Douglas Scott
Douglas Scott, VSB No. 28211
DOUGLAS A. SCOTT, PLC
Suite 311, 1805 Monument Avenue
Richmond, Virginia 23220
☎804.257.9860
Counsel to the Debtor-In-Possession

## **LOCAL RULE 9022-1(C)(1) CERTIFICATION**

I, the undersigned, hereby certify that the foregoing proposed Order has been endorsed by all necessary parties.

/s/ Douglas Scott

Macintosh HD:Users:douglasscott:Desktop:Sale Procedures Order 03 13 10

6