UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In re: Mountain Run Golf, Inc., et al.            Chapter 11
               Debtors.                        Case No.: 09-37000-KRH
                                                                          Jointly Administered

**SMITH TURF & IRRIGATION LLC'S ANSWER AND OBJECTION TO AMENDED MOTION FOR FOR ENTRY OF AN ORDER APPROVING A BREAK-UP FEE, BIDDING PROCEDURES AND AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS, AND OTHER RELATED RELIEF**

       COMES NOW, Smith Turf & Irrigation LLC, assignee of Turf Equipment Leasing Company ("Smith Turf") and for its Answer and Objection to the Amended Motion for Entry of an Order Approving a Break-up Fee, Bidding Procedures and Authorizing the Sale of Assets Free and Clear of Liens and Interests, and other Related Relief filed by Mountain Run Golf, Inc. (collectively with Mountain Run, LLC, the "Debtor"), states the following:

**ANSWER**

       1.        Smith Turf admits the allegations contained in Paragraph 1 of the Motion.

       2.        Smith Turf denies the allegations contained in Paragraphs 3, 9, 10, 12, 16, 25 and 35 of the Motion and therefore demands strict proof thereof.

       3.        Smith Turf is without sufficient information to admit or deny the allegations contained in Paragraphs 4, 5, 6, 11, 13, 15, 17, 18, 19, 20, 21, 23, 24, 26, 27, 30, 31, 32, 34 and 36 of the Motion and therefore demands strict proof thereof.

Robert H. Chappell, III, Esquire (VSB #31698)
Timothy G. Moore, Esquire (VSB #41730)
Jennifer J. West, Esquire (VSB # 47522)
Erin E. Kessel, Esquire (VSB #65360)
Spotts Fain PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Post Office Box 1555
Richmond, Virginia 23218-11555
Tel: (804) 697-2000  Fax: (804) 697-2100
Counsel for Smith Turf & Irrigation LLC,
Assignee of Turf Equipment Leasing Company

4. Paragraphs 2, 7, 8, 21, 22, 28, 29, 33, 37 of the Motion contain legal conclusions to which no response is necessary and to the extent a response is necessary, the allegations contained therein are denied and strict proof thereof is demanded.

5. The first numbered Paragraph 14 of the Motion contains legal conclusions to which no response is necessary and to the extent a response is necessary, the allegations contained therein are denied and strict proof thereof is demanded.

6. With respect to the second numbered Paragraph 14 of the Motion, Smith Turf asserts it has an interest in certain personal property located on the Golf Course as more fully set forth in Adversary Proceeding Number 09-03219-KRH. Smith Turf is without sufficient information to admit or deny the allegations regarding other liens on or interests in the property and therefore demands strict proof thereof. Smith Turf denies the remaining allegations and demands strict proof thereof.

7. All allegations not specifically admitted are denied.

## BACKGROUND

1. Smith Turf has an interest in certain collateral used by the Debtor (the "Smith Turf Collateral") as evidenced by a series of leases executed and delivered by the Debtor to Smith Turf (hereinafter collectively the "Equipment Leases").

2. In connection with the Equipment Leases, on or about November 23, 2007, Richard Laibstain ("Laibstain") executed and delivered a Personal Guarantee (hereinafter "the Laibstain Guarantee").

3. In connection with the Equipment Leases, on or about November 23, 2007, Ray M. Tate ("Tate") executed and delivered a Personal Guarantee (hereinafter the "Tate Guarantee").

4. On or about February 19, 2009, based on defaults under the terms of the Equipment Leases, Smith Turf filed a Complaint (the "State Court Action") in the Circuit Court for the County of Hanover, Virginia seeking to recover possession of the Collateral and further seeking entry of a money judgment order against the Debtor, Laibstain and Tate.

5. Laibstain, Tate, Mountain Run, LLC and Mountain Run Golf, Inc. failed to answer or reply within the time set forth in the Rules of the Supreme Court of Virginia and accordingly were in default in the State Court Action.

6. On October 27, 2009, Mountain Run, LLC filed a petition for relief under Chapter 11 of Title 11 of the United States Code and was assigned bankruptcy case number 09-37005-DOT.

7. On October 27, 2009, Mountain Run Golf, Inc. filed a petition for relief under Chapter 11 of Title 11 of the United States Code and was assigned bankruptcy case number 09-37000-KRH. The bankruptcy cases of the Debtor have been administratively consolidated under bankruptcy case number 09-37000-KRH.

8. On November 16, 2009, a Notice of Removal was filed transferring the State Court Action to this Court and it was assigned Adv. Pro. No. 09-03219-KRH. This State Court Action is scheduled for trial on July 1, 2010, before this Court.

9. On or about January 12, 2010, and again on March 9, 2010, Essex Bank filed a Motion for Relief from Stay.

10. On or about March 2, 2010, Essex Bank filed a Motion to Dismiss.

11. On or about March 12, 2010, the United States Trustee's Office filed a Motion to Approve and Authorize Appointment of Chapter 11 Trustee.

12. On or about April 13, 2010, the Debtor filed a Motion for Entry of an Order

Approving a Break-up Fee, Bidding Procedures and Authorizing the Sale of Assets Free and Clear of Liens and Interests, and other Related Relief.

13. On or about April 15, 2010, the Debtor filed an Amended Motion for Entry of an Order Approving a Break-up Fee, Bidding Procedures and Authorizing the Sale of Assets Free and Clear of Liens and Interests, and other Related Relief (the "Motion").

14. As more particularly described in the Motion, the Debtor seeks approval of an Asset Purchase Agreement ("APA"), a copy of which has not been provided to the Court or any other interested parties, except perhaps Essex Bank, as of the date of this filing. The known terms of the APA include (a) a purchase price of $2,000,000.00; (b) a sale free and clear of all liens, encumbrances and interests; (c) use the APA as a stalking horse bid at a competitive, public auction; and (d) a break up fee of $100,000.00. *See* Motion, p. 3, at ¶¶ 5 and 6.

## RESPONSE TO MOTION AND MEMORANDUM IN SUPPORT THEREOF

15. Smith Turf objects to the Motion for the following reasons:

    a. Mountain Run Golf, Inc. is not a proper party to seek the relief sought in the Motion.
    b. The proceeds from the proposed sale would, at most, benefit two creditors only. The sale would not further the Debtor's reorganization efforts or create proceeds that would inure to the benefit of the Debtor or any other creditors, including unsecured creditors. Further, the proposed sale is not reasonable under the business judgment standard.
    c. The proposed Purchase Price of $2,000,000.00 is unreasonably low.
    d. The Debtor has failed to disclose the principals or other ownership of the Purchaser and the extent of Essex Bank's or other parties' involvement in negotiations; therefore it is impossible to determine whether the sale may be considered an "arms length" transaction.
    e. Contrary to Paragraph 12 of the Motion, the Debtor has failed to provide sufficient notice of the terms of the conditions of the proposed sale, the property to be sold or the hearing details.
    f. The proposed sale of assets is not authorized under Section 363(f) of the Bankruptcy Code.
    g. Allowing the Golf Course to be sold without allocating the purchase price to the particular asset being sold – and particularly those assets that are subject to one or more lien – impermissibly deprives secured creditors, such as Smith Turf, the protection

4

of their collateral and the ability to credit bid for the Golf Course in a meaningful way.

  h. The Stalking Horse Bidder should be required to share Due Diligence Materials.

  i. The $100,000.00 break up fee is unreasonably high under the circumstances.

### A.   Improper Party Seeking Relief

16. It appears that the Motion proposing the sale was filed by Mountain Run Golf, Inc. Upon information and belief, based upon a review of the information related to title to the Golf Course and other property, Mountain Run, LLC holds legal title to all real property the Motion proposes to sell. Mountain Run, LLC should be the entity seeking authority to sell the Golf Course and/or other assets. The representation in the Motion that Mountain Run Golf, Inc. is the owner of the Golf Course is factually inaccurate.

### B.   Lack of 363(b) Benefit

17. A sale under 363(b) must result in benefit to the estate and be justified under the business judgment test. The purpose of a §363(b) sale is to maximize the benefit to the debtor's entire estate. *In re: Trans World Airlines, Inc., et al.*, 2001 Bankr. LEXIS 980 at 32-33. The *TWA* Court determined that "[t]here is nothing in the statute that requires a §363(b) sale to provide a pro rata distribution to all unsecured creditors or even any distribution to all unsecured creditors. *Id*. Courts have ruled that a "debtor applying under §363(b) must demonstrate that a sale will aid the debtor's reorganization." *In re Encore Healthcare Associates*, 312 B.R. 52 at 55 (Bankr. E.D. Pa. 2004) (citing *Committee of Equity Security Holders v. the Lionel Corporation*, 722 F.2d 1063 (2d Cir. 1983). In denying the application for a sale under § 363(b) where only the secured creditor was to receive any benefit, the *Encore Healthcare* Court further reasoned that the "asset sale can be easily accomplished outside of bankruptcy either with the consent of the secured creditor or by abandoning the asset to the secured creditor to sell on its own. *Id* at

56.

18. The *Encore Healthcare* opinion further evaluated application of the *Lionel* business judgment test as justification for a sale of a debtor's assets through a proposed §363 sale and determined that the

> proposed sale would not, as a whole benefit the Debtor or creditors. In fact, if allowed, the sale would terminate Debtor's existence. If the Debtor's proposed sale were authorized, the likelihood of reorganization would dissipate as there would remain no assets from which a plan could be proposed. Additionally, the proceeds from the proposed sale would, at most, benefit one creditor only. The sale would not create proceeds that would inure to the benefit of the unsecured creditors.

*Id.* at 57 (quoting *In re Fremont Battery Co.*, 73 B.R. 277 (Bankr. N.D. Ohio 1987)).

19. The preconfirmation sale of certain assets of the debtor is often an important step in furtherance of the Debtor's reorganization. In the instant case involving Mountain Run Golf, Inc. and Mountain Run, LLC, it is clear that no reorganization is possible. The sale of the Golf Course through a §363 sale will not further the Debtors' efforts to reorganize, and will produce proceeds only for the benefit of one or two secured creditors. The Debtor's Motion provides no explanation of the benefit to the Debtor or the Debtor's creditors other than Essex Bank (and perhaps Smith Turf, although the Debtor makes no proposal for dealing with the interest of Smith Turf, including allocation as set forth below).

20. Furthermore, the Debtor's only asserted sound business reason for selling the Golf Course immediately is the fact that golf is a seasonal business and that an "immediate sale will yield the best price…[and] tend to maximize the sale price of the Golf Course." Motion ¶ 10.

21. Courts have identified a number of factors to be considered when a §363 motion is brought before the court, including:

  a. Is there evidence of a need for speed?

      b. What is the business justification?

      c. Is the case sufficiently mature to assure due process?

      d. Is the proposed APA sufficiently straightforward to facilitate competitive bids or is the purchaser the only potential interested party?

      e. Have the assets been aggressively marketed in an active market?

      f. Are the fiduciaries that control the debtor truly disinterested?

      g. Does the proposed sale include all of the debtor's assets and does it include the "crown jewel?"

      h. What extraordinary protections does the purchaser want?

      i. How burdensome would it be to propose the sale as part of confirmation of a chapter 11 plan?

See *In re: On-Site Sourcing, Inc.*, 412 B.R. 817 (Bankr. E.D. Va. 2009)(J. Mayer)(quoting *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 423-424 (Bankr. S.D. Tex. 2009). As discussed herein, Smith Turf asserts that consideration of these factors weighs in favor of denying the Motion.

**C.  Amount of Bid Not Reasonable Under Business Purpose Test**

22. Pursuant to an "As Is" appraisal conducted on April 21, 2009 the fair market value of the Golf Course was $6,750,000.00.

23. The Debtor's proposed Purchase Price of $2,000,000.00 represents a seventy-one percent (71%) decrease in value in approximately twelve months.

24. The Debtor provides no factual basis for why the market value has fallen 71% over a 12 month period.

25. The Debtor also has not shown that the best way to sell the property is as a going concern golf course.

26. If in fact, the value has dropped precipitously, the land may have more value as raw land with the other assets related to the Golf Course sold separately to maximize price. No evidence has been presented in the Motion to indicate the value of the property as raw land.

27. Setting the Purchase Price at this amount is neither factually nor legally justified and is inappropriate in this case. Additionally, the Debtor has provided no explanation or justification for the Purchase Price.

**D.     Sale is Not an Arm's Length Transaction**

28. The court in *Gulf Coast Oil*, states that "a debtor-in-possession must exercise fiduciary duty in determining whether and how to propose a sale of assets. If entities that control the debtor will benefit, or will potentially benefit, from the sale the court must carefully consider whether it is also appropriate to defer to their business judgment." 404 B.R. at 424.

29. The disclosures contained in the Debtor's Motion make no disclosure of the identity of the owners and/or representatives or officers/directors of the Purchaser, or of the terms of any financing for the Purchaser, or of any relationship of the Purchasers or the Purchaser's principals/insiders to the Debtors, the Debtors' principals, or the Debtor's insiders, affiliates or creditors. The Motion also fails to disclose any potential benefit of the proposed sale to the Debtor's principals.

30. The Debtor's Motion further fails to confirm that the principals of the Debtor will receive no benefit from the proposed sale, or any related agreements with the Debtor's creditors. The Debtor's Motion also fails to disclose the extent of any participation by secured creditors in the negotiation of the APA and/or the Bidding Procedures, as those terms are defined in the Motion. Without the additional disclosures outlined above, it is impossible for the Court and the creditors to determine whether the APA was negotiated at arm's length.

### E. Lack of Adequate Notice of the Sale

31. Paragraph 12 of the Motion states that the Debtor's notice procedures "will provide sufficient notice of the terms and conditions of the proposed sale, the property to be sold, and the date, time and place of the hearing on the approval of the sale."

32. As of the time of filing this Response, the Debtor has failed to provide creditors and parties in interest with a copy of the Purchaser's Asset Purchase Agreement.

33. Pursuant to the Debtor's Motion and the Bidding Procedures attached thereto, the APA contains: (1) terms relevant to assumption and assignment by the debtor of certain leases including a list of the leases and executory contracts; (2) a complete list of assets to be sold; and (3) terms and conditions related to conforming bids.

34. Further infirmity in the Motion and proposed sale process is that there is no mechanism or other provision for advertising or otherwise soliciting additional interested bidding parties.

35. Without the APA, Smith Turf and the other creditors have not been provided with sufficient notice of the terms of the proposed sale, nor the property to be sold.

36. To the extent notice has not been sent to all interested parties as required by Rule 2002 of the Bankruptcy Rules, Smith Turf further objects to the sufficiency of notice of the Motion.

37. Upon information and belief, no creditors or interested parties, other than Essex Bank, were consulted or invited to participate in negotiation of the APA and/or the Bidding Procedures even though the Debtor was working on these documents for several weeks prior to the filing of the Motion. In spite of extended negotiations, Smith Turf and other creditors are now compelled to respond to the Motion on less than forty eight (48) hours notice and without

the benefit of seeing the APA.

38. The Debtor has alleged that the sale must happen quickly to maximize the price at which the Golf Course is sold, however, it is well established that "the need for expedition . . . is not a justification for abandoning proper standards." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 US 414, 450 (1968).

39. The lack of adequate notice gives rise to the inference that the Debtor intentionally seeks to impose a schedule designed and intends to deprive all creditors other than Essex Bank of due process and to preclude their ability to investigate, conduct discovery and prepare adequately for hearing on this contested matter.

40. Accordingly, Smith Turf requests that it be given sufficient opportunity to review the terms of the APA and to conduct appropriate discovery with regard to the relief requested in the Motion and the APA so that all relevant evidence and testimony may be presented to the Court prior to a judicial determination on the Motion.

41. To the extent that the Court allows the Debtor to go forward with the hearing on the Motion on Tuesday, April 20, 2010, Smith Turf requests that it be allowed to rely on evidence and testimony presented to the Court in prior hearings in this case as Smith Turf has had insufficient time to assemble all necessary evidence and witnesses.

**F.      The proposed sale of assets cannot be completed under Section 363(f)**

42. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of any interest in such property only if the debtor meets one of five enumerated conditions.

43. The Debtor asserts in its Motion that one of two conditions of Section 363 have been met: either the creditors consent pursuant to 363(f)(2) or the creditors may be compelled to accept a money satisfaction of their liens pursuant to Section 363(f)(5). Despite the fact that the

Motion omits the remaining three conditions of Section 363(f), for the following reasons, the debtor cannot satisfy any one of the five conditions.

44. Section 363(f)(1) cannot be satisfied because applicable non-bankruptcy law clearly does not permit the sale of the Golf Course subject to Smith Turf's lien free and clear of its lien interest without satisfying Smith Turf's lien in full or without the consent of Smith Turf.

45. Second, at this time Smith Turf does not consent to the sale of the Golf Course property that is subject to its lien as proposed in the Motion. Thus subsection (f)(2) of Section 363 is not satisfied.

46. Section 363(f)(3) requires a showing that the sale price for the Golf Course exceeds the value of all claims on the property. The Motion fails to show this. In fact, the scheduled secured claims against the Golf Course exceed 9 million dollars, which is far in excess of the proposed sale price.

47. Fourth, the Debtor has not indicated that it has a bona fide dispute as to Smith Turf's lien, and thus section 363(f)(4) cannot be satisfied. Indeed, the Debtor has acknowledged Smith Turf's lien in multiple agreements and a signed but unentered consent order.

48. Finally, the Debtor asserts that Smith Turf may be compelled to accept a money satisfaction of its lien based upon the value of its secured collateral, pursuant to 363(f)(5). Motion, ¶¶ 14. "However, if the sale of the collateral will result in a deficiency, the secured creditor generally should be able to dispose of it according to the security agreement. It is of no benefit to the unsecured creditors and, if the secured lender is to suffer a loss, he should ordinarily be permitted to suffer the loss at his own hands." *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 534 (Bankr. E.D. Va. 2004)(J. Mayer). In *Takeout Taxi Holdings*, the Bankruptcy Court for the Eastern District of Virginia in Alexandria refused to permit a 363 sale of certain

personal property free and clear of all liens where the secured creditors were not to be paid in full. Further, the Court noted that Section 363(f)(5) is "intended for interests other than typical monetary liens." *Id.* at 534.

49. In *In re Silver*, 338 B.R. 277, 282-283 (Bankr. E.D. Va. 2004)(J. Tice) this Court held that "the trustee may not sell debtors' property under § 363(f)(5) because the underlying interests would not be paid in full in a legal or equitable proceeding. In a foreclosure sale, even at $ 235,000.00, the secured claimants would not receive the full value of their liens on the property. Only the claims of the first few lien holders would be satisfied, and hundreds of thousands of dollars in debt would remain."

50. There is no question that the secured creditors would not be paid in full in a legal or equitable proceeding and therefore, the Debtor has failed to satisfy the condition of 363(f)(5)

**G.   Credit Bidding and Allocation**

51. In *In re CDX Gas, LLC*, 2009 Bankr LEXIS 1391 (S.D. Tx. 2009), the Court held that a Motion to Sell filed by a Chapter 11 Debtor failed to satisfy Section 363(b) of the Bankruptcy Code because, "without allocation of a portion of the purchase price to the [collateral] as to which Pinpoint asserts a lien, the Motion to Sell would extinguish Pinpoint's lien, and deprive it of the protections it would receive at confirmation of a Chapter 11 plan, including (presuming the plan would require a cramdown) the requirement that a plan be fair and equitable as to Pinpoint's lien."

52. Accordingly, the assets to be sold pursuant to the APA and the Motion should be appropriately divided in order to allow separate bids to be submitted for the Smith Turf Collateral. Bids for the Smith Turf Collateral should be taken separately from the real property assets, thereby giving Smith Turf an opportunity to credit bid on the Smith Turf Collateral as

provided in Section 363(k).

53. Not only will this protect Smith Turf's statutory rights under 363(k), but it will also allow for a true determination of the market value of the Smith Turf Collateral. Until such time as the Adversary has been fully adjudicated, there is a possibility that the Court may determine that Smith Turf does not hold a first priority lien on the Smith Turf Collateral. In that event, Smith Turf, if the successful bidder for the Smith Turf Collateral, would be required to deliver cash to the Debtor in the amount of the high bid for the Smith Turf Collateral.

54. Smith Turf specifically reserves and asserts its right to credit bid pursuant to § 363(k).

### H. Stalking Horse Bidder should be required to share Due Diligence Materials

55. To the extent that this Court determines that the "Break-Up Fee" proposed in the Debtor's Motion is appropriate, Smith Turf asserts that the Stalking Horse Bidder should be required to share its due diligence materials, including but not limited to title reports/commitments, surveys, environmental assessments (the "Due Diligence Materials"), with all Qualifying Bidders, including those secured creditors holding liens against the assets to be sold. It is reasonable that the Stalking Horse Bidder be required to share these Due Diligence Materials because the Motion asks that it be compensated for its expenses in the event that another bidder is ultimately the successful purchaser.

56. Smith Turf further asserts that to the extent there is no survey available to show the true acreage and metes and bounds of the real property being sold, such lack of survey: (1) chills the bidding as no other potential purchaser will be able to determine what property it is actually bidding on; and (2) provides the Purchaser with an unfair advantage as the Purchaser has had considerable time in which to become comfortable with the property being purchased.

**I.      Break-up Fee**

57.     The Motion proposes a break-up fee of $100,000.00 representing a "reasonable estimate of the costs which would likely be incurred by a prospective bidder in conducting the necessary due diligence for a transaction of this size and complexity."  Motion, ¶ 25.

58.     This Break-Up Fee amount totals approximately 5.0% of the Purchase Price.  Nowhere in the Motion does the Debtor present any facts to support the assertion that this is representative of costs to be incurred.

59.     The Motion asserts that the Break-Up Fee and other costs of sale shall be paid out of the cash proceeds of the sale.  The Motion fails to explain: (1) how the Break-Up Fee and/or the expenses of sale will be paid in the event of a credit bid that does not result in any cash proceeds; or (2) the justification for allowing expenses to be incurred and paid for a sale that provides no benefit to the Debtor, the Estate or the creditors.

60.     Rather than pre-approving the extent and nature of the bid protection, it would be more appropriate for the Court to defer consideration of such Break-Up fee until after conclusion of the sale process.  At that time, the Court can receive evidence as to the amount of costs incurred by the Purchaser and approve payment of an amount.

**J.      Additional Bases for Objection**

61.     Smith Turf reserves the right to argue additional reasons, facts or legal bases for its objection on the basis of the short notice from the filing of the Motion and the fact that it still has not had an opportunity to review the APA.

**CONCLUSION**

As stated by Judge Mayer in *In re On-Site Sourcing, Inc.*,

> in fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups;

> rather, he should consider all salient factors pertaining to the
> proceeding and accordingly, act to further the diverse interests of
> the debtor, creditors and equity holders, alike. He might, for
> example, look to such relevant factors as the proportionate value of
> the asset to the estate as a whole, the amount of elapsed time since
> the filing, the likelihood that a plan of reorganization will be
> proposed and confirmed in the near future, the effect of the
> proposed disposition on future plans of reorganization, the
> proceeds to be obtained from the disposition, vis-à-vis any
> appraisals of the property, which of the alternatives of use, sale or
> lease the proposal envisions, and most importantly perhaps,
> whether the asset is increasing or decreasing in value.

412 B.R. 817, 823-824 (Bankr. E.D. Va. 2009).

Based upon the foregoing and an evaluation of the Motion and its impact on all parties in interest, the proposed sale is not permissible pursuant to Section 363 of the Bankruptcy Code and therefore the Debtor's Motion should be denied.

WHEREFORE, Smith Turf & Irrigation, Inc. respectfully requests that this Court enter an Order denying the Debtor's Motion and granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

SMITH TURF & IRRIGATION LLC,
ASSIGNEE OF TURF EQUIPMENT
LEASING COMPANY


By: /s/ Jennifer J. West
      Counsel

Robert H. Chappell, III, Esquire (VSB #31698)
Timothy G. Moore, Esquire (VSB #41730)
Jennifer J. West, Esquire (VSB #47522)
Erin E. Kessel, Esquire (VSB #65360)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Tel: (804) 697-2000
Fax: (804) 697-2100
Counsel for Smith Turf & Irrigation LLC,
Assignee of Turf Equipment Leasing Company

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Response was delivered to all parties receiving notice through the Court's ECF electronic delivery system and to the following, constituting all necessary parties, this 18th day of April, 2010:

Douglas Scott, Esquire
Douglas A. Scott, PLC
1805 Monument Avenue, Suite 311
Richmond, VA 23220

Vern E. Inge, Jr., Esquire
Bruce H. Matson, Esquire
LeClair Ryan
Federal Reserve Bank Building
701 East Byrd Street, Sixteenth Floor
Richmond, VA 23219

Robert B. Van Arsdale, Esquire
Assistant U.S. Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

                                        /s/ Jennifer J. West
                                        Counsel