UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: Mountain Run Golf, Inc. )
      Mountain Run, LLC )   Case No. 09-37000-KRH
          Debtors. )   Chapter 11
                                          )   Procedurally Consolidated

## SECOND AMENDED MOTION FOR ENTRY OF AN ORDER BIDDING PROCEDURES AND AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS, AND OTHER RELATED RELIEF

**NOW COMES** Mountain Run Golf, Inc., debtor and debtor-in-possession, and Mountain Run, LLC, debtor and debtor-in-possession, (the "Debtors"), pursuant to 11 U.S.C. §§ 105, 363 and 365, to move this Court to enter an Order authorizing the sale of some or all of the Debtors' assets free and clear of liens and interests pursuant to a public auction with a "stalking horse" bidder, and providing for bidding procedures in connection with the public auction of such assets.[1] In support of this Motion, the Debtor respectfully represents follows:

### Background

1.    The Debtors commenced this case by filing a voluntary Chapter 11 petition on October 22, 2009. The Debtors have continued to operate as a debtor-in-possession

---

[1] Certain capitalized terms contained in the Motion are defined in Exhibit B, the proposed Bidding Procedures or in Exhibit A, the proposed Asset Purchase Agreement ("APA").

DOUGLAS A. SCOTT, PLC
1805 Monument Avenue, Suite 311
Richmond, Virginia 23220
☎ 804 257.9860
Counsel to the Debtor-in-Possession

pursuant to 11 U.S.C. §§ 1107, 1108. Mountain Run Golf, Inc.'s case has been procedurally consolidated with the Chapter 11 case of Mountain Run, LLC, No. 09-37005-KRH.

2. Jurisdiction over this Motion is vested in the Court pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding. 28 U.S.C. §157(b). Venue is proper in this District under 28 U.S.C. §1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. § 363.

3. The Debtors' business is the operation of a semi-private golf club located in Hanover County, Virginia, doing business as The Federal Club, located at 13000 Palmer's Way, Glen Allen, Virginia 23059. Mountain Run Golf, Inc., owns and operates an eighteen hole golf course and associated facalities (the "Golf Course Assets"). It is one of the finest golf courses in the Mid-Atlantic states. Mountain Run, LLC, owns building lots surrounding the golf course held for sale to persons who wish to construct residences and undeveloped land (the "Residential and Development Assets") (collectively, the Golf Course Assets and the Residential and Development Assets will be referred to as the "Assets"). The ownership of both entities is held by the same investors.

4. Since the filing, the Debtors have been searching for new financing or a new investor. They have implemented substantial changes in its operations intended to cut expenses and increase revenues without impairing the quality of the golf course. However, cash flow is presently insufficient to service all of its debts, secured and

unsecured, and the most prudent course appears to be to sell the Golf Course Assests and/or the Residential and Development Assets.

5. For the past several weeks, the debtor and its secured lender, Essex Bank ("Bank"), have been negotiating with various interested parties seeking a potential buyer for part or all of the Debtors' assets which would be willing to serve as a stalking horse bidder in an auction of such assets. Despite virorous and purposeful efforts, these negotiations proved unavailing. After two disappointments, the Debtora and the Bank determined that the Bank should serve as the stalking horse bidder utilizing its ability to credit bid pursuant to 11 U.S.C. § 363(k). The Bank has set up an entity to carry out this plan, MRAP, LLC.

To this end, the Debtors and the Bank have negotiated an APA which is attached hereto as Exhibit A. This form of document is intended as the form to be utilized by any other interested party that desires to bid for all or part of the Debtors' assets as set forth in the proposed Bidding Procedures. It is also intended to be, subject to the Court's approval, the offer to purchase specified assets of the Debtors that will serve as the stalking horse bid, subject to special conditions applicable only to the Bank's bid.

The Bank's Initial Bid is for $3,500,000. The purchase price may be reduced by $500,000 if 11 lots known as the "Meg's Lane Lots" are not conveyed to the buyer because the conditions precedent in the APA are not met. Additionally, a sale of

Mountain Run Utility, a non-debtor entity, by its owners will be required, with the consideration for the Utility company *subtracted* from the amount of the Initial Bid.

6. Certain terms and conditions are contained in the APA. Among the most important of those terms are that: (a) the Golf Course Assets and/or the Real Estate and Development Assets be sold free of all liens, encumbrances or interests pursuant to 11 U.S.C. § 363(f); (b) the Buyer's APA serves as a "stalking horse" bid at an auction (the "Auction") of the Assets; (c) there be a competitive, public auction of the Assets; (d) the existing memberships in good standing will be honored, subject to payment of all membership fees, charges and other financial obligations being paid in full prior to closing of a sale of the Golf Course Assets and in the future; (e) certain limitations on the Bank's ability to credit bid at the Auction.

*The Debtors may sell the Golf Course outside of the ordinary course of business.*

7. 11 U.S.C. § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In accordance with FED.R.BANKR.PROC. 6004(f)(1), sales of property outside the ordinary course may be by private sale or public auction.

8. The majority of courts have applied a business judgment rule to such a sale, requiring that a "sound business reason" exist in support of a debtor's request to sell estate property other than in the ordinary course of business. *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re WBO Partnership*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995). To satisfy the "business purpose test", the debtor must

demonstrate (a) a sound business purpose; (b) good faith; (c) adequate notice of the sale; and (d) a fair and reasonable purchase price.

9. Ample basis exists for a sale of the Golf Course Assets outside of the ordinary course of business. The debtor has determined, after evaluation of its business prospects and in consultation with the Bank, that a going-concern sale of the Golf Course Assets in conjunction with the Residential and Development Assets will likely yield the greatest return on the assets.

10. A sound business reason exists for selling the Golf Course Assets now. The golf course is, in many ways, a seasonal business. An immediate sale will yield the best price because any potential purchaser will enjoy the benefit of the maximum revenues from the course that come in the Spring, Summer and early Fall. Such a sale will tend to maximize the sale price of the Golf Course Assets. The proposed sale of the Residential and Development Assets as part of such a sale is the direct result of expressions of interest in the marketplace for the option to purchase the entire development.

11. The sale and the sale process has been proposed in good faith. The APA was negotiated at arm's length between the Bank and the Debtors. The proposed Bidding Procedures will insure that the Golf Course Assets and/or the Residential and Development Assets are sold for the maximum price by providing an opportunity for competing bids.

12. The notice procedures set forth herein will provide sufficient notice of the terms and conditions of the proposed sale, the property to be sold, the date and time of the Auction and the date, time and place of the hearing on the approval of the sale.

13. The Debtors believe that the proposed sale price is the minimum price that the Assets should bring in the marketplace but, to the extent that it is not, the Auction of the Assets under the proposed Bidding Procedures after a period of public advertising will prove or disprove that belief.

14. To facilitate the sale, the debtor requests that the Court enter an order allowing the debtor to sell the Golf Course Assets and the Residential and Development Assets free and clear of all liens and interests that are attached to it pursuant to 11 U.S.C. § 363(f). That section provides, in part, that the debtor may sell property of the estate free and clear of liens and interests if:

(2) such entity consents; …

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest…

11 U.S.C. § 363(f).

15. To the best of Debtors' information and belief, the Bank and Smith Turf Irrigation, LLC, each claim a a first lien in some of the property used at the golf course (namely irrigation equipment) and are currently litigating the priority of lien in an adversary proceeding in this Court (No. 09-03219). To the best of Debtor's information

and belief, both creditors will consent to the sale of the Golf Course Assets, pursuant to Bankrtupcy Code § 363(f)(2), subject to the Agreed Stipulation filed in this proceeding by Smith Turf Irrigation, LLC.

16. Subject to Court approval, the Debtors propose to pay from the gross sale proceeds the usual and customary costs and expenses relating to such sale, including closing costs and expenses. After payment of the closing expenses, the remaining proceeds shall be paid to the lien creditors, as their respective interests may appear or escrowed as the Court may direct until such time as the interests of the respective lien claimants are resolved.

17. Accordingly, the Debtors respectfully submit that a good business reason exists for seeking the liquidation of the Debtors' assets by way of an Auction outside of the context of a confirmed plan of reorganization.

### *Reasonable Bidding Procedures are Required.*

18. The Buyer's APA requires, as a condition to Closing, the entry of an Order approving certain bidding procedures ("Bidding Procedures"). Accordingly, pursuant to this Motion, the debtor requests approval of the sale and bidding procedures outlined below. A complete copy of the proposed Bidding Procedures are attached hereto as Exhibit B. The Debtors believe that the Bidding Procedures set out in Exhibit B will maximize the value of the Assets and provide for an organized method for the solitation and evaluation of any competing bids from other potential purchasers.

19. A bid for the Assets will constitute a "Qualifiying Bid" only if the bid satisfies the following requirements (the "Bid Requirements"):

>   (i) be an offer to purchase the Assets for cash only, or such other consideration as the Debtors shall agree to;
>
>   (ii) not be contingent on obtaining financing or any other conditions to Closing;
>
>   (iii) be subject to the same terms as set forth in the APA subject to the excpetions listed in Section F of the Bidding Procedures; and
>
>   (iv) be made upon terms and provisions substantially similar to those set forth in the APA with respect of the sale and purchase of the Golf Course Assets, the Residential and Development Assets, or both, in an aggregate purchase price in a net cash amount of at least $25,000.00 in excess of any comparable previous bid.

For this purpose, because the Bank's Initial Bid is for $3,500,000 for all of the assets, any Qualified Bidder wishing to make an Bid for the Golf Course Assets only shall bid $2,000,000; any Qualified Bidder wishing to make a Bid for the Residential and Development Assets only shall bid $1,500,000,; and any Qualified Bidder wishing to bid on all of the Assets shall bid $3,500,000, plus the minimum overbid amount of an additional $25,000.

20. All Bids shall be subject to approval by this Court. Only Bidders having submitted a Qualifying Bid shall be eligible to participate at the Auction. In order to participate in the Auction, a Qualified Bidder shall: (a) include each of the Bid Requirements; and (b) be prepared to demonstrate to the Debtors its ability to consummate the purchase of any such asset and fulfill its obligations. Bidding shall be by

open auction. Any incremental bid made subsequent to the initial overbid shall be at least $25,000.00 greater than the most recent bid.

21. In the event the party who submits the highest and best bid for all or part of the Assets fails to close on the sale through no fault of the debtor, the Deposit submitted by such party shall be forfeited to the Debtors. To the extent that a party submitting the highest and best offer fails to close on the sale of the Assets, the Debtors may sell the assets to the party submitting the second highest or best offer without further Court approval.

*Assumption of Unexpired Leases and Executory Contracts*

22. The APA further provides for the assumption and assignment by the Debtors of certain contract and leases to the Bank or to a Competing Bidder.

23. 11 U.S.C. § 365 (a) states in pertinent part that:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

11 U.S.C. § 365(b)(1) further states:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

9

> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default;

11 U.S.C. § 365(b)(1).

24. Pursuant to these provisions, the Debtors may assume and assign any unexpired lease or executory contract so long as any existing defaults are cured and provision is made to provide adequate assurance of the proposed assignee's future performance.

25. The APA requires the Bank or a Competing Bidder assume the obligation to cure any defaults and to provide adequate protection of future performance when assuming the assignment of any leases or contracts. Which contracts or leases to be assumed will be up to the winnining bidder, pursuant to the terms of the APA. The Debtors reasonably believe that the assumption and assignment of any unexpired leases or contracts is in the best interest of the Debtors' estate and its creditors.

26. The Debtors shall serve notice to the lessors of any leases to be assumed and to the contracting parties of any executory contracts to be assumed and assigned as to the proposed assumption and assignments, included proposed cure amounts, if any (the "Notice"). The Notice will provide that any objections to

the proposed assumptions and assignments must be filed with the Court and served on debtors' counsel on or before June 30, 2010.

27. At the Approval Hearing, the Debtors will seek an Order authorizing the assumption and assigment of the leases and contracts set forth in the Notice required by ¶ 26 above to the winner of the Auction, be that Purchaser or the Competing Bidder making the highest or best Bid.

### *"Credit Bidding"*

28. Pursuant to 11 U.S.C. § 363(k), any any lien creditor which has a lien which secures an allowed claim may bid at the Auction, subject to the provisions of § 363(k). The credit bids must be in substanitally the same form as the APA.

### *Scheduling of the Approval Hearing and other dates*

29. The Debtors respectfully request that the Court enter an Order scheduling the Auction and the Approval Hearing and any other necessary associated dates or deadlines.

### *Notice of this Motion*

30. The Debtors submit that by the date of the Approval Hearing, adequate notice shall have been given to all known interested parties. The notice provided by the Notice of Motion with regard to the filing of this Motion is

sufficient to provide proper and effectice notice of the proposed Bidding Procedures and Auction sale of the Assets.

31. Notice of this Motion shall be given to: (a) the Office of the United States Trustee; (b) applicable taxing authorities; (c) Debtors; secured creditors; and (d) all parties receiving notice through the Court's ECF system. The Debtors assert that no other or further notice is required. The Court's anticipated Sale Procedures Order will be served on all creditors of the estate and persons or entities who have especially requested such notice.

32. Pursuant to Local Rule 9013-1(G)(1), the required Memorandum of Points and Authorities has been incorporated into this Motion.

**WHEREFORE,** the Debtors respectfully move this Court to enter an Order substantially in the form annexed hereto as Exhibit C:

(i) Approving the Bidding Procedures provided herein, subject to the limitations stated herein;

(ii) Approving the Notice Provisions contained therein;

(iii) Approving the sale of the Golf Course Assets and/or, the Real Estate and Development Assets, free and clear of liens and interests;

(iv) Approving the assumption and assignment of unexpired leases and executory contracts;

(v) Scheduling the Auction and the Approval Hearing;

(vi) Ordering that bidding under § 363(k) be allowed; and

(vii) Granting the debtor such other and further relief as is just and proper.

Dated: April 28, 2010

/s/ Douglas Scott
Douglas Scott, VSB No. 28211
DOUGLAS A. SCOTT, PLC
1805 Monument Avenue, Suite 311
Richmond, Virginia 23220
☎ 804.257.9860
Counsel to the Debtor-in-Possession

Macintosh HD:Case Files:Case Files:M:Mountain Run Golf, Inc.:Motion for Sale etc FINAL 04 27 10.doc